## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
## URBANA DIVISION

| | | |
|---|---|---|
| JOSE JAIME LOPEZ, | ) | |
| | ) | |
| Petitioner-Defendant, | ) | |
| | ) | |
| v. | ) | Case No. 16-cr-20004-JES |
| | ) | |
| UNITED STATES, | ) | |
| | ) | |
| Respondent-Plaintiff. | ) | |

## ORDER AND OPINION

**JAMES E. SHADID, U.S. District Judge:**

Before the Court is Petitioner-Defendant Jose Jaime Lopez's Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 (d/e 75), Motion to Amend his § 2255 Motion (d/e 84), and Motion for Equitable Tolling and Equal Treatment (d/e 94).  Lopez's Motion claims that his indictment was defective, raises statutory and due process claims related to Judge Bruce's failure to recuse, and raises ineffective assistance counsel claims related to trial and/or appellate counsel's failure to address these arguments.  For the reasons below, the Court DENIES Petitioner's § 2255 Motion (d/e 75), DENIES Petitioner's Motion to Amend (d/e 84), and DECLINES to issue a Certificate of Appealability.  Petitioner's Motion for Equitable Tolling and Equal Treatment (d/e 94) is DISMISSED as moot.

### I. BACKGROUND

#### A. Lopez's Conviction and Sentence

The facts underlying Lopez's convictions have been summarized in both the Seventh Circuit's opinion on his direct appeal, *United States v. Lopez,* 907 F.3d 537 (7th Cir. 2018), and in this Court's previous order on his motion for a new trial, *United States v. Lopez*, No. 16-CR-

20004-JES-JEH, 2020 WL 5017762 (C.D. Ill. Aug. 25, 2020).  However, for ease of reference, the facts of his case will again be recounted here in summary fashion.  In 2014, law enforcement agents intercepted cellular communications after securing a warrant from a Maryland state court judge.  The communications revealed that Heliodoro Moreno planned to transport a large quantity of illegal drugs from Texas to Lopez in Illinois, using George Salinas as a courier.  Lopez arranged for his friend Andrew Linares to pick up the illegal drugs from Salinas and bring them to him. Law enforcement intercepted the drugs at an Illinois bus stop, arrested Salinas and Linares, and seized 10 ounces of methamphetamine from Salinas.  In 2015, the government developed a source who initiated three controlled purchases of illegal drugs from Lopez, who was later charged along with others in this case.  Lopez was indicted with one count of knowingly attempting to possess 50 grams or more of methamphetamine with intent to distribute, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A)(viii), as well as one count of distributing a mixture and substance containing cocaine, two counts of distributing methamphetamine, and one count of possession with intent to distribute a substance containing cocaine.  *Lopez,* 907 F.3d. at 540.  The last count, possession with intent to distribute a substance containing cocaine was later dismissed by the government.  *See* October 24, 2016 Minute Entry.

Lopez pled not guilty and had a jury trial presided over by United States District Judge Colin S. Bruce.  The trial evidence showed Lopez used the telephone number identified in the Maryland state court order and the United States and multiple witnesses confirmed the number as Lopez's.  The intercepted calls revealed that Morena asked Lopez if he could promote "whiskey" where he lived, and Lopez responded, "a lot is moving here."  Moreno and Lopez also discussed the quantity of drugs ("onions") and cost ("$1,000 per onion").  Moreno also confirmed Lopez knew Salinas and told Lopez that Salinas would contact him.  The next day, Salinas and Lopez

spoke about Salinas bringing a shipment of drugs from Texas to Illinois.  During the next three

days, Moreno, Salinas, and Lopez made plans for Salinas to travel by bus from Houston to

Illinois to deliver 10 ounces of drugs to Lopez.  The plan was for Salinas to stay in Illinois until

he received $4,000 from Lopez, after which Lopez would settle up with Moreno for the

remaining balance.  To effectuate the plan, Lopez asked his friend Linares to pick up Salinas at

the bus stop.  *Lopez,* 907 F.3d at 540–41.

On October 2, 2014, Salinas went to a Houston bus station and met one of Moreno's

workers, who took him to pick up a cellophane-wrapped package which Salinas hid in his crotch

area before boarding the bus to Rantoul, Illinois.  Salinas periodically sent text messages to

Lopez over the 24-hour trip updating him on the status of the delivery.  On October 3, 2014,

Linares, who knew Salinas only as "old man," waited at the Rantoul bus stop for Salinas' arrival.

Earlier that morning, Lopez reminded Linares to pick up Salinas and told Linares of the status of

Salinas' bus.  He confirmed the pickup location and directed him to take Salinas to Lopez's

home.  When Linares arrived at the bus stop, he sent a text message to Lopez stating he had

arrived, and it looked "all clear."  Lopez responded, "see you in a bit."  Salinas informed Lopez

when the bus arrived, and Lopez responded that Linares was at the bus stop and instructed

Salinas not to say anything.  *Id.* at 541–42.

On the day prior, Baltimore DEA agents informed agents in Illinois about the intercepted

phone calls, and by that evening Illinois agents had obtained a search warrant for prospective cell

phone location data.  The Illinois DEA agents used the cell phone location data and physical

surveillance to identify the bus Salinas was traveling on and followed it to Rantoul.  Law

enforcement agents arrested Salinas and Linares after Salinas exited the bus and entered Linares'

car.  Salinas gave them the package, which was later tested and determined to contain 276 grams

of methamphetamine.  While in custody, Salinas and Linares consented to searches of their cell phones, which revealed text messages to and from Lopez about the planned drug transaction and call records showing multiple attempted calls from Lopez after their arrest. Both phones had contact information for Lopez with Lopez's cell phone number.  Law enforcement waited to arrest Lopez and completed three controlled buys from Lopez in 2015.  In January 2016, law enforcement executed a search warrant on Lopez's home, seizing address books with contact information for Salinas and Linares, digital scales, ingredients used in the manufacture of cocaine and methamphetamine, and vacuum heat sealers and other drug packaging equipment. Following the three-day jury trial, the jury convicted Lopez on all counts, and determined the offense involved 50 grams or more of methamphetamine.  *Id.*

Prior to trial, the government had filed an information pursuant to 21 U.S.C. § 851, notifying Lopez of its intent to seek a sentencing enhancement due to Lopez's prior felony drug convictions.  Accordingly, at sentencing, Lopez faced a mandatory sentence of life imprisonment on Count One.  On February 17, 2017, Judge Bruce imposed the mandatory sentence of life imprisonment on Count One, as well as life on Counts Three and Four, and 188 months on Count Two.  *See* Judgment (d/e 45).

Lopez appealed, arguing that the district court should not have denied his motion to suppress, that there was insufficient evidence for a conviction, and that his mandatory life sentence should not have been imposed.  The Seventh Circuit affirmed his sentence and conviction on October 24, 2018.  *United States v. Lopez,* 907 F.3d 537 (2018).  The Supreme Court denied Lopez's Petition for writ of certiorari on April 22, 2019.  *Lopez v. United States*, 139 S. Ct. 1612 (2019).

**B.  Discovery of Ex Parte Communications Between Judge Bruce and the United States Attorney's Office.**

As stated above, United States District Judge Colin S. Bruce presided over Lopez's criminal proceedings.  For the purposes of this Opinion, the Court assumes the reader's familiarity with the facts surrounding Judge Bruce's ex parte communications with the United States Attorney's Office for the Central District of Illinois ("the Office").  These facts have been comprehensively discussed and analyzed by the Seventh Circuit Judicial Council and the Seventh Circuit Court of Appeals, and are recounted here only in a summary fashion.  *See In re Complaints Against Dist. Judge Colin S. Bruce*, Nos. 07-18-90053, 07-18-90067 (7th Cir. Jud. Council May 14, 2019) (available at http://www.ca7.uscourts.gov/judicial-conduct/judicialconduct_2018/07_18-90053_and_07-18-90067.pdf); *United States v. Williams*, 949 F.3d 1056 (7th Cir. 2020); *United States v. Atwood*, 941 F.3d 883 (7th Cir. 2020).

Prior to his appointment to the judiciary, Judge Bruce worked in the Office in Urbana, Illinois, in the Central District of Illinois for twenty-four years.  In August 2018, a newspaper reported that Judge Bruce had engaged in ex parte communications with the Office regarding the criminal trial of *United States v. Nixon*, a case he was presiding over.  In the emails to a paralegal at the Office, Judge Bruce criticized a novice prosecutor, complaining that her weak cross examination had turned the case "from a slam-dunk for the prosecution to about a 60-40 for the defendant," and called the defendant's testimony "bullshit."  Upon learning of the emails, the undersigned, in my capacity at the time as Chief District Judge, removed Judge Bruce from all cases involving the Office.  *See Williams*, 949 F.3d at 1059.

The Office conducted a search of its email archives between Judge Bruce's chambers and the Office, finding over one-hundred ex parte communications. The majority of the emails addressed ministerial matters.  However:

> they often showed Judge Bruce cheering on Office employees and addressing them by nicknames.  For example, Judge Bruce corresponded ex parte with a secretary in the Office about scheduling for Atwood's co-defendant, writing, "Roger-dodger. GO SONCHETTA [a nickname for the secretary]!"  And after a pretrial conference, Judge Bruce reassured a prosecutor about a filing miscommunication: "My bad. You're doing fine. Let's get this thing done."  At other times, Judge Bruce wrote to prosecutors in the Office to congratulate and thank them for persuading [the Seventh Circuit] to affirm his decisions.

*Atwood*, 941 F.3d at 885.

In 2019, the Judicial Council of the Seventh Circuit reviewed two complaints filed against Judge Bruce.  A Special Committee was appointed by Chief Judge Diane P. Wood to investigate the complaints.  After conducting interviews and a hearing, the Special Committee issued a report and recommendations, which were adopted in full by the Judicial Council of the Seventh Circuit.  *In re Complaints Against Dist. Judge Colin S. Bruce*, Nos. 07-18-90053, 07-18-90067 (7th Cir. Jud. Council May 14, 2019).  The Judicial Council publicly reprimanded Judge Bruce for his practice of ex parte communications and found it violated Canon 3(a)(4) of the Code of Conduct for United States Judges.  *Id*.  Judge Bruce was also ordered to remain unassigned to matters involving the Office until September 1, 2019.  *Id*.  However, the Judicial Council "identified no evidence suggesting that Judge Bruce's ex parte contact or relationship with the U.S. Attorney's Office in the Central District of Illinois impacted his decision making in any case."  *Id*.  Further, with the exception of the *Nixon*-related and appeal-related emails, the Special Committee saw "no evidence of Judge Bruce discussing the merits of pending cases with the Office ex parte."  *Id*.

### C. Lopez's Motion for a New Trial

On May 15, 2019, Lopez filed a pro se Motion for a New Trial pursuant to Rule 33 of the Federal Rules of Criminal Procedure (d/e 68). He argued that he was entitled to a new trial because Judge Bruce's ex parte communications with the U.S. Attorney's Office violated Lopez's due process rights. After counsel was appointed for Lopez and additional briefing was filed, the Court denied the motion. *See Lopez*, 2020 WL 5017762 at *4. The Court determined that Lopez's due process claim failed for the same reason the Seventh Circuit held the due process claim in *United States v. Williams*, 949 F.3d 1056 (7th Cir. 2020), failed: Lopez had not shown that Judge Bruce was actually biased. *Id.* Lopez appealed, arguing that the ex parte emails violated his due process rights because they reflected an appearance of bias. The Seventh Circuit affirmed, reiterating its holding in *Williams* that an appearance of bias alone does not violate due process. *See United States v. Lopez*, No. 20-2771, 2021 WL 4239653, at *1 (7th Cir. June 8, 2021).

### D. Lopez's Motion Under 28 U.S.C. § 2255

While Lopez's Motion for a New Trial was being litigated, this Motion to Set Aside, Vacate, or Correct Sentence pursuant to 28 U.S.C. § 2255 (d/e 75) was stayed. Lopez filed this initial motion on April 13, 2020. He argues that because he was charged with attempted possession of methamphetamine without reference to the federal attempt statute, the indictment was defective and he is actually innocent of his conviction, and that his trial and appellate counsel were ineffective for failing to raise this issue. Lopez also argues that he is entitled to a resentencing before a different judge because Judge Bruce violated the federal recusal statute, 28 U.S.C. § 455(a). While the § 2255 proceedings were still stayed, on July 12, 2021, Lopez filed a Motion to Amend his § 2255 Motion (d/e 84) to specifically include a claim that his appellate

counsel was ineffective for failing to argue on appeal that he was entitled a resentencing due to Judge Bruce's violation of the federal recusal statute and a claim that his due process rights were violated based on the appearance of bias. After the Court lifted the stay, the government filed a response (d/e 87). Lopez has now filed a reply (d/e 95), as well as a Motion for Equitable Tolling and Equal Treatment (d/e 94) relating to the claims he raised in his motion to amend. After careful consideration, this Order now follows.

## II. LEGAL STANDARD

Under 28 U.S.C. § 2255(a), a prisoner may move the sentencing court to vacate, set aside, or correct a sentence "upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). Relief under § 2555 is an extraordinary remedy because a § 2255 petitioner has already had "an opportunity for full process." *Almonacid v. United* States, 476 F.3d 518, 521 (7th Cir. 2007). Accordingly, it "is available 'only in extraordinary situations, such as an error of constitutional or jurisdictional magnitude or where a fundamental defect has occurred which results in a complete miscarriage of justice.'" *Harris v. United States*, 13 F.4th 623, 627 (7th Cir. 2021), *reh'g denied* (Nov. 10, 2021) (citations omitted).

Lopez's claims fall into two categories: claims related to the indictment's failure to cite the federal attempt statute and claims related to Judge Bruce's ex parte email communication. Within both categories he raises various claims that his trial and appellate attorneys rendered ineffective assistance of counsel in violation of the Sixth Amendment. *Strickland v. Washington*, 466 U.S. 668, 684-86 (1984). To succeed on an ineffective assistance of counsel claim, a

petitioner must show both that his attorney's performance was deficient and that he was prejudiced as a result. *Vinyard v. United States*, 804 F.3d 1218, 1225 (7th Cir. 2015). Courts, however, must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland,* 466 U.S. at 690. A petitioner must also prove that he has been prejudiced by his counsel's representation by showing "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. Absent a sufficient showing of both cause and prejudice, a petitioner's claim must fail. *United States v. Delgado,* 936 F.2d 303, 311 (7th Cir. 1991).

### III. DISCUSSION

**A. Lopez is not entitled to relief on his Claims Relating to the Failure to Cite the Federal Attempt Statute.**

Lopez's first three claims relate the omission of a citation to the federal attempt statute, 21 U.S.C. § 846, in Count One of his indictment. While Count One in the indictment is titled "Attempted Possession of Methamphetamine with Intent to Distribute," and charges that Lopez "knowingly *attempted* to possess fifty grams or more of methamphetamine. . . with the intent to distribute," it only includes a citation to 21 U.S.C. §§ 841(a)(1) and (b)(1)(A)(viii), and not § 846. *See* Indictment, d/e 10 (emphasis added). In fact, the attempt statute was not expressly cited to anywhere on the docket or in his judgment of conviction. *See* Judgment, d/e 45. Because of this, Lopez claims he is "actually innocent" of the federal crime on the indictment because "there is no such federal crime" as attempted possession of methamphetamine as charged in Count One of his indictment. He also alleges his trial and appellate attorneys were ineffective for failing to challenge the defective indictment and conviction. Lopez is not entitled to relief on any of these claims.

1. **Lopez's stand-alone challenge to the indictment is not cognizable on collateral review.**

Lopez's first ground for relief is that his indictment fails to state an offense. However, regardless of the merits, a defect in an indictment is not jurisdictional and does not deprive a court of its power to hear a case. *See United States v. Cotton*, 535 U.S. 625, 631 (2002). Nor is Lopez's claim grounded in the constitution. And, he cannot claim that the offense of attempted possession of methamphetamine with intent to distribute does not exist, only that his indictment did not cite all the relevant statutes that combine to form his offense. Accordingly, this non-jurisdictional, non-constitutional claim cannot be brought in a collateral attack. *See Hill v. United States*, 368 U.S. 424, 428, 82 S. Ct. 468, 471 (1962); *United States v. Addonizio*, 442 U.S. 178, 185, 99 S. Ct. 2235, 2240 (1979).

Moreover, Lopez waived his challenge to the indictment by failing to file a pretrial motion. Under Rule 12(b)(3)(B) of the Federal Rules of Criminal Procedure, an objection to a defect in the indictment must be made by pretrial motion or it is waived. *See* Fed. R. Crim. P. 12(b)(3)(B)(v) (expressly including "failure to state an offense"); *United States v. Muresanu*, 951 F.3d 833, 839 (7th Cir. 2020). As explained below, Lopez would not have been able to successfully raise this untimely challenge on direct appeal because he could not have shown that his indictment was "so obviously defective as not to charge the offense by any reasonable construction." *United States v. Barrios-Ramos*, 732 F. App'x 457, 459 (7th Cir. 2018) (citing *United States v. Sandoval*, 347 F.3d 627, 633 (7th Cir. 2003)). And, now, on collateral review, his stand-alone claim of an indictment defect has the additional problem of being procedurally defaulted because he failed to raise it on direct appellate review. *See Bousley v. United States*, 523 U.S. 614, 621 (1998); *Barnickel v. United States*, 113 F.3d 704, 706 (7th Cir. 1997) (noting

that a 2255 motion "is not a substitute for a direct appeal" and non-constitutional claims, "which could have been raised on direct appeal but were not, are deemed waived even without taking cause and prejudice into account.").  Accordingly, the Court finds that Lopez's first ground of relief must be dismissed.

### 2. Lopez's challenge to the indictment and claims of ineffective assistance of counsel are meritless because he was not prejudiced by the citation omission.

Lopez also seeks to couch his indictment challenge as a claim of ineffective assistance of counsel.  While this legal avenue avoids the procedural hurdles barring his stand-alone claim, fatal to all of Lopez's claims is that this citation error does not invalidate his indictment or conviction, and he has not even attempted to establish prejudice.  Lopez is correct that the indictment technically should have listed the correct statute.  *See* Fed. R. Crim. P. 7(c)(1) ("For each count, the indictment or information must give the official or customary citation of the statute, rule, regulation, or other provision of law that the defendant is alleged to have violated."); *United States v. Roya,* 574 F.2d 386 (7th Cir. 1978).  However, the Federal Rules of Criminal Procedure are also clear that "[u]nless the defendant was misled and thereby prejudiced, neither an error in a citation nor a citation's omission is a ground to dismiss the indictment or information or to reverse a conviction."  Fed. R. Crim. P. 7(c)(2).  Indictments are to be read practically and as a whole, rather than in a hyper-technical manner.  *United States v. Dooley*, 578 F.3d 582, 590 (7th Cir. 2009).  An indictment need not contain a specific statutory citation as long as it (1) states each element of the crime charged; (2) provides the defendant with adequate notice of the nature of the charges; and (3) allows the defendant to raise the judgment as a bar to future prosecutions.  *See United States v. Castaldi*, 547 F.3d 699, 703 (7th Cir. 2008).

While Lopez argues that a citation to 21 U.S.C. §§ 841(a)(1) and (b)(1)(A)(viii) alone does not encompass a federal crime for *attempted* possession of methamphetamine with intent to distribute, the federal crime of attempted possession of methamphetamine with intent to distribute does exist.  And, the indictment made clear he was being charged under an attempt theory by including the word "attempt" both in the title and in its description of the offense.  *See* Indictment, d/e 10 (titling count one as "Attempted Possession of Methamphetamine with Intent to Distribute," and charging that Lopez "knowingly *attempted* to possess fifty grams or more of methamphetamine. . . with the intent to distribute").  Moreover, at trial, the jury was instructed as to Count One as recommended by the Seventh Circuit, without objection by Lopez using the instruction for attempted possession with intent to distribute:

> Count 1 of the indictment charges the defendant with the attempted possession of methamphetamine with the intent to distribute it. In order for you to find the defendant guilty of this charge, the government must prove each of the following elements beyond a reasonable doubt:
>
> 1.  The defendant intended to possess a controlled substance and intended to distribute it to another person; and
>
> 2.  The defendant believed that the substance was some kind of a controlled substance. The government is not required to prove that the defendant knew the substance was actually a controlled substance; and
>
> 3.  The defendant knowingly took a substantial step toward possessing a controlled substance, intending to possess it. The substantial step must be an act that strongly corroborates that the defendant intended to distribute a controlled substance.
>
> If you find from your consideration of all the evidence that the government has proved each of these elements beyond a reasonable doubt as to the charge you are considering, then you should find the defendant guilty of that charge.
>
> If, on the other hand, you find from your consideration of all the evidence that the government has failed to prove any one of these elements beyond a reasonable doubt as to the charge you are considering, then you should find the defendant not guilty of that charge.

*See* Jury Instructions, d/e 30 (Pattern Criminal Jury Instructions of the Seventh Circuit (2012 Ed.) at 646, 21 U.S.C. § 846, Attempted Possession with Intent to Distribute – Elements).

 Lopez did not challenge the indictment or the jury instructions in the district court or on appeal.  The record shows that all parties were clear that Lopez was being charged with attempt and Lopez makes no claim that he was misled or confused as to the alleged criminal acts.  *See United States v. Jones*, 314 F. App'x 883, 886 (7th Cir. 2009) (finding no grounds for reversal where a citation was missing from an indictment, but there was no claim that the defendant was misled, no any evidence in the record suggesting "that anyone involved in the trial was confused about the alleged criminal acts.").  And, on appeal, the Seventh Circuit held that the government presented sufficient evidence to prove beyond a reasonable doubt that Lopez committed this crime.  *See Lopez,* 907 F.3d at 543-44.

 In reply, Lopez continues to argue that the offense he was convicted of was not a federal offense.  He argues that attempted possession of methamphetamine with intent to distribute is not criminalized under § 841, and that it would have been a matter of first impression for the Seventh Circuit had counsel raised the argument.  For support he points to *United States v. McKenzie*, 743 Fed. Appx. 1 (7th Cir. 2018), where the defendant was charged with delivery under § 841 and not attempted delivery under § 846.  The Seventh Circuit found that "even if the distribution was not to be completed until" after the defendant and the other person "arrived at the store, it was still was chargeable as a delivery because it was an 'attempted' transfer" and attempted transfers are covered under the definition of delivery under § 802(8).  *Id.* at 3.

 Lopez appears to argue that, like *McKenzie*, he was not charged with *attempted* possession, and, unlike the definition of delivery in *McKenzie*, without reference to § 846, possession with intent to distribute under § 841 does not encompass attempts.  While there may

be some logic to the second part of Lopez's argument, reading the indictment as a whole he *was* charged with attempted possession.  Put another way, the error with Lopez's indictment was the omission of the citation to § 846, not a failure to charge him with attempt.  Lopez and his attorney knew he was charged with attempt and they proceeded throughout trial with that understanding.  Lopez is not entitled to have his conviction vacated due to a missing statutory citation in the indictment when the record is clear that he has suffered no prejudice from the error.  And, without prejudice, his claims of ineffective assistance of counsel fail as well.

### B.  Lopez's Is Not Entitled to Relief Based on Judge Bruce's Failure to Recuse Under the Federal Recusal Statute.

Lopez's fourth claim in his original motion is that he is entitled to a resentencing under 28 U.S.C. § 455(a) due to Judge Bruce's failure to recuse.  This Court has already held in two prior cases that a claim of a violation of the federal recusal statute is not cognizable in collateral review.  *See Shannon v. United States*, No. 18-CV-2233-JES, 2020 WL 6947421, at *16 (C.D. Ill. Nov. 25, 2020); *Chandler v. United States*, No. 16-CR-20040-2-JES, 2021 WL 640808, at *1 (C.D. Ill. Feb. 18, 2021).  As stated above, a petitioner may avail himself of § 2255 relief only if he can show that there are "flaws in the conviction or sentence which are jurisdictional in nature, constitutional in magnitude or result in a complete miscarriage of justice."  *Boyer v. United States*, 55 F.3d 296, 298 (7th Cir. 1995), *cert. denied*, 116 S. Ct. 268 (1995).  Section 2255 is limited to correcting errors that "vitiate the sentencing court's jurisdiction or are otherwise of constitutional magnitude."  *Guinan v. United States*, 6 F.3d 468, 470 (7th Cir. 1993) (citing *Scott v. United States*, 997 F.2d 340 (7th Cir. 1993)).  A § 2255 motion is not a substitute for a direct

appeal.  *Doe v. United States*, 51 F.3d 693, 698 (7th Cir. 1995), *cert. denied*, 116 S. Ct. 205

(1995); *McCleese v. United States*, 75 F.3d 1174, 1177 (7th Cir. 1996).

      Here, the Court and the Seventh Circuit have already determined that Lopez has not

shown a constitutional error as a result of Judge Bruce presiding over his trial.  *See United States*

*v. Lopez*, No. 16-CR-20004-JES-JEH, 2020 WL 5017762 (C.D. Ill. Aug. 25, 2020); *United*

*States v. Lopez*, No. 20-2771, 2021 WL 4239653 (7th Cir. June 8, 2021).  Lopez has not

presented any argument for why a violation of the federal recusal statute alone could be

considered jurisdictional in nature or qualify as a miscarriage of justice.  Moreover, Judge Bruce

did not exercise discretion in sentencing Lopez, as he sentenced Lopez to the mandatory life

sentence.  There is no possibility of a miscarriage of justice as a result of Judge Bruce's failure to

recuse.

      Regardless, even if Lopez's claim was cognizable on collateral review, the error in failing

to recuse was harmless and he is not entitled to relief.  Under the federal recusal statute, a judge

is required to recuse themselves from "any proceeding in which his [or her] impartiality might

reasonably be questioned."  28 U.S.C. § 455(a).  Lopez did not raise his claim before the trial

court, so at best his claim should be analyzed under the plain error standard.  While the

government has repeatedly conceded that Judge Bruce's conduct gave the appearance of

impartiality, making his failure to recuse under § 455(a) an error, it argues that in this case the

error was harmless.  To determine whether Judge Bruce's violation of § 455(a) was a harmless

error in a given case, the Seventh Circuit has relied on the factors set forth in *Liljeberg v. Health*

*Services Acquisition Corp.,* 486 U.S. 847, 864 (1988): "(1) the risk of injustice to the parties in

this case, (2) the risk of injustice to parties in future cases, and (3) the risk of undermining public

confidence in the judicial process."  *Atwood*, 941 F.3d at 885.  Using these factors, the Seventh

Circuit has analyzed Judge Bruce's emails in three cases: *United States v. Atwood,* 941 F.3d 883 (7th Cir. 2019); *United States v. Williams*, 949 F.3d 1056 (7th Cir. 2020); and *United States v. Orr*, 969 F.3d 732 (7th Cir. 2020).  Because these cases are directly on point to the issue here, a detailed discussion of each case is warranted.

    **1.** ***United States v. Atwood***

    In *Atwood,* the defendant pleaded guilty to three controlled substance offenses.  *Atwood*, 941 F.3d at 885.  At sentencing, Judge Bruce sentenced Atwood to a total of 210 months' imprisonment, in the middle of the 188 to 235 month sentencing guidelines range.  The Seventh Circuit found that all three *Liljeberg* factors weighed in favor of the defendant.  Under the first factor, the risk of injustice to the parties, the Seventh Circuit highlighted the discretion afforded to a judge during sentencing:

> As we have said before, "[t]he open-endedness of the § 3553(a) factors leaves ample room for the court's discretion." *United States v. Warner*, 792 F.3d 847, 855 (7th Cir. 2015). That discretion invites the risk that a judge's personal biases will influence or appear to influence the sentence he imposes. *See United States v. Smith*, 775 F.3d 879, 882 (7th Cir. 2015) (remanding for resentencing because of the possibility that a judge's prior knowledge of a case was a conscious or unconscious influence on the sentence she imposed). Upholding Atwood's sentence, then, creates a real risk of unfairness to him.

> Conversely, there is little risk of unfairness to the government if we remand Atwood's case for resentencing. Although a second sentencing proceeding carries some administrative cost, the government concedes that resentencing would not impose a special hardship in this case. *Cf. Rosales-Mireles v. United States*, ——— U.S. ———, 138 S. Ct. 1897, 1909, 201 L.Ed.2d 376 (2018) (characterizing a resentencing proceeding as "relatively inexpensive"). Since there is a substantial risk of unfairness to Atwood if we uphold his sentence and little risk of unfairness to the government if we do not, the first *Liljeberg* factor favors resentencing.

*Atwood,* 941 F.3d at 885.  As to the second *Liljeberg* factor, the risk of injustice to future parties, the Seventh Circuit found that there would be the potential to "'prevent a substantive injustice in some future case' . . ., by encouraging judges to exercise caution in their communications."  *Id.*

Finally, turning to the third *Liljeberg* factor, the risk of undermining public confidence in the judicial process, the Seventh Circuit found that "[a]llowing Atwood's sentence to stand would undermine the public's confidence in the fairness of this sentence and in the impartiality of the judiciary." *Id.* at 886.  Accordingly, the Seventh Circuit remanded for resentencing by a different judge. *Id.*

### 2. *United States v. Williams*

The Seventh Circuit next addressed the ex parte emails in *United States v. Williams,* 949 F.3d 1056 (7th Cir. 2020).  Judge Bruce had presided over Williams' jury trial, at which he was found guilty of obstruction of commerce by robbery.  However, before sentencing, Williams' case had been reassigned to now Chief Judge Darrow.  The Seventh Circuit found the facts distinguishable from *Atwood* because Judge Bruce had only presided over the jury trial and not the sentencing hearing.  "This distinction matters because judges generally have more discretion over sentencing than the outcome of a jury trial." *Id.* at 1064.  Turning to the *Liljeberg* factors, the Seventh Circuit found all factors pointed against granting a new trial.  Under the first *Liljeberg* factor, in considering the risk to Williams, the Seventh Circuit noted that none of the communications were with individuals that had any influence over the outcome of the case.  Moreover, "although Judge Bruce presided over Williams's trial, he was not the trier of fact making the ultimate determination of whether the government had proved Williams guilty beyond a reasonable doubt. A jury found Williams guilty, and Williams has not questioned the jury's impartiality." *Id.* at 1064.  Additionally, Judge Bruce's rulings before and during trial were minimal, unchallenged on appeal, and non-controversial.  The Seventh Circuit found that none of his rulings "suggest that Judge Bruce's appearance of bias had any impact on the outcome of Williams's trial. Nor does Williams argue that any particular ruling was prejudicial."

*Id.* Finally, in considering the risk of injustice to the government, the Seventh Circuit found that "the costs of retrial pose a significant risk of injustice to it. The government would likely spend valuable time and money to retry this case thereby diverting resources from other cases." *Id.* at 1065.

Turning the second *Liljeberg* factor, the Seventh Circuit found that the public reprimand given by the Special Committee would largely address any risk of injustice to future litigants. Additionally, the Seventh Circuit highlighted changes that Judge Bruce made in his practices to prevent any future risks:

> Judge Bruce changed his practices in response to the inquiry. He adopted a policy prohibiting any email communications with counsel, prepared a standard response to any future ex parte communications initiated by litigants, and created a system that populates chambers email and his work email into separate inboxes. These changes should help reduce any future problems. In this case, we believe that this factor leans towards denying Williams's requested relief.

*Id.* at 1065.

The Seventh Circuit also found that the third *Liljeberg* factor, the risk of undermining public confidence in the judicial process, leaned against granting a new trial, although it was a "close call:"

> Here, the fact that Williams was convicted by a jury of his peers is significant. Unlike a sentencing, where "the most significant restriction on a judge's ample discretion is the judge's own sense of equity and good judgment," *Atwood*, 941 F.3d at 886, a judge has less discretion over the outcome of a jury trial. We can imagine a case where a judge has substantial discretion and his rulings have a significant impact on the outcome, thus undermining the public's confidence in the judicial process. But this is not one of those cases.
>
> As discussed above, none of Judge Bruce's pre-trial and trial rulings suggest any actual bias. And the Special Committee did not find any evidence that "Judge Bruce's conduct or ex parte communications impacted any of his rulings or advantaged either party" in any case. On the other hand, overturning a jury verdict based purely on the appearance of bias creates a risk that the public will lose confidence in the judicial process. *See, e.g.*, *Cerceda*, 172 F.3d at 815–16; *see also Bergeron*, 636 F.3d at 883–84; *Marcavage v. Bd. of Trs. of Temple Univ.*,

232 F. App'x 79, 84 (3d Cir. 2007). And requiring witnesses to relive this serious
crime by testifying at a retrial would pose unwarranted hardship on the witnesses
when all evidence suggests the original trial was fair and impartial. This final
factor slightly favors upholding Williams's conviction.

*Williams,* 949 F.3d at 1065.

### 3. *United States v. Orr*

In *United States v. Orr,* 969 F.3d 732 (7th Cir. 2020), the final case in which the Seventh

Circuit has addressed the Judge Bruce's ex parte emails, the Seventh Circuit found the failure to

recuse was not harmless and granted Orr's request for a new trial.  In *Orr*, the defendant was

found guilty of possessing a firearm as a felon following a two-day jury trial.  While Orr

appealed his conviction after a jury trial like in *Williams,* the Seventh Circuit found that Orr had

raised challenges to "three seemingly discretionary decisions by Judge Bruce: the denial of the

motion to suppress, the admission of drug evidence under Federal Rule of Evidence 404(b), and

the allowance of cross-examination questions about Orr's prior felony conviction." *Id.* at 738.

Although the Seventh Circuit affirmed Judge Bruce's denial of Orr's motion to suppress evidence

and found that this decision "required little discretion," the Seventh Circuit found Judge Bruce's

ex parte communications "cast a pall over certain decisions" in the case "which required the

exercise of substantial discretion." *Id.* at 740.  These two discretionary rulings

distinguished *Orr* from *Williams*, the court reasoned, because:

> [t]he pre-trial and trial rulings in *Williams* were routine, granted in favor of both
> parties, uncontested on appeal, and not overly prejudicial to the defendant. *See
> Williams*, 949 F.3d at 1064. The two discretionary rulings in this case were non-
> routine, decided in favor of the government, and challenged on appeal. Notably,
> both rulings in this case significantly aided the prosecution.

*Id.*

With the above in mind, the Seventh Circuit proceeded to address the *Liljeberg* factors.

As to the first factor, the risk of injustice to the parties, the Seventh Circuit noted the heightened

risk of injustice given the discretionary rulings. *Id.* at 741. Moreover, while the Government

would be required to spend time and money retrying the case, because of "the

straightforwardness and brevity of the prosecution's case" the Seventh Circuit found the

government's risk of injustice was "relatively slight." *Id.* On the second *Liljeberg* factor, the

Seventh Circuit agreed with the analysis in *Williams*, and found that there was not a high "risk

that the denial of relief will produce injustice in other cases." *Id.*

Finally, turning to the third *Liljeberg* factor, the risk of undermining the public's

confidence in the judicial process, the Seventh Circuit found that despite the fact that a jury

found Orr guilty, the factor still went in Orr's favor:

> Judge Bruce exercised substantial discretion by admitting evidence of Orr's drug
> dealing and by permitting the prosecutor to cross-examine Orr on his felony
> conviction for dealing drugs. These evidentiary decisions were particularly
> consequential because they bolstered the prosecution's case, which rested on
> circumstantial evidence and credibility calls. Given these discretionary rulings,
> upholding Orr's conviction may damage the public's confidence in the impartiality
> of the judiciary. For these reasons, the final *Liljeberg* factor favors vacating Orr's
> conviction

*Id.* at 741–42.

### 4. Applying *Atwood, Williams,* and *Orr* to Lopez's case

Here, applying the cases above, the Court finds that the error in Lopez's case was

harmless. Notably, Lopez appears to only be seeking a resentencing as was ordered in *Atwood*.

Nonetheless, the Court finds that neither a resentencing, nor a new trial, would be warranted.

Under the first *Liljeberg* factor, fairness to the litigants, the Court finds the facts here are similar

to *Williams*. Like *Williams*, Judge Bruce presided over Lopez's jury trial and was not the trier of

fact. Moreover, Judge Bruce made minimal rulings and none appear to have been controversial.

While Judge Bruce denied Lopez's motion to suppress, and Lopez appealed the denial, the

Seventh Circuit's analysis shows that ruling was not a close call. As summarized by the Seventh

Circuit, Lopez claimed that "the government introduced intercepted communications at trial to prove that he was communicating with Moreno in Texas and posits that "if" the law enforcement agents were located outside of Maryland when they intercepted the communications at issue, then the communications were obtained unlawfully under § 2518." *Lopez*, 907 F.3d at 543. But, on appeal, Lopez provided nothing more than speculation that the listening post was outside of Maryland, and the Seventh Circuit found no error in the district court's denial of the motion to suppress. *Id.* Lopez has not highlighted any others rulings that might have involved discretion or have been objectionable. Accordingly, Lopez's case was not like *Orr* and there is no indication that Judge Bruce's rulings impacted the jury trial. Moreover, while Judge Bruce presided over Lopez's sentencing, Lopez's mandatory life sentence meant that Judge Bruce did not exercise discretion in imposing the sentence. In fact, as Lopez has only requested a resentencing, it is unclear what he would hope to gain from a favorable ruling. He has not argued that he would not continue to be subject to the mandatory life sentence. This lack of sentencing discretion distinguishes Lopez's case from *Atwood*. Turning to the prejudice to the government, retrying and/or resentencing Lopez many years after his alleged crimes would pose a "significant risk of injustice" to the United States, which would have to spend "valuable time and money" and thus "divert[] resources from other cases." *Williams*, 949 F.3d at 1065. Accordingly, the first *Liljeberg* factor favors denying Lopez's request for relief.

As to the second factor, the risk of injustice to future litigants, the Court finds no basis to go against the Seventh Circuit's findings in *Williams* and *Orr*. This factor also favors denying Lopez's request for relief.

The third *Liljeberg* factor is the risk of undermining the public's confidence in the judicial process. Like in *Williams*, this factor might be "a close call." 949 F.3d at 1065.

Ultimately, the court relied upon the fact that Williams was convicted by a jury and none of Judge Bruce's pretrial or trial rulings suggested any actual bias. *Id.* at 1065–66. Additionally, the court reasoned that "overturning a jury verdict based purely on the appearance of bias creates a risk that the public will lose confidence in the judicial process." *Id.* at 1066. For the reasons discussed above, the same considerations that guided the *Williams* court apply equally here—Lopez was convicted by a jury and none of Judge Bruce's pretrial or trial rulings suggested any actual bias. And, there is little risk that Lopez's life sentence would undermine the public's confidence in the judicial process because Judge Bruce exercised no discretion in imposing that mandatory sentence.

Accordingly, if Lopez's federal recusal statute claim is cognizable on collateral review, the Court would deny the claim because all three *Liljeberg* factors favor finding that Judge Bruce's failure to recuse under § 455(a) was harmless to Lopez.

### C. Lopez's Amended Claims are Untimely And Meritless

Finally, in his amended motion, Lopez argues that he is entitled to relief because his appellate attorney was ineffective for failing to raise an argument under the federal recusal statute on appeal and because his due process rights were violated based on Judge Bruce's appearance of bias.

### 1. Lopez's amended claims are timely.

The government first argues that both of these claims are untimely. In 1996, Congress enacted the Antiterrorism and Death Penalty Act (AEDPA) "to advance the finality of criminal convictions." *Mayle v. Felix,* 545 U.S. 644, 662 (2005) (citing *Rhines v. Weber*, 544 U.S. 269

(2005)).  AEDPA created a strict one-year period of limitations for motions under 28 U.S.C.

§ 2255.  28 U.S.C. § 2255(f).  The one-year period begins to run from the latest of:

> (1) the date on which the judgment of conviction becomes final;
>
> (2)  the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
>
> (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

 28 U.S.C. § 2255(f)(1)-(4).  The timeliness of each claim must be considered independently.

*Davis v. United States*, 817 F.3d 319, 327 (7th Cir. 2016).

Here, the Court did not receive Lopez's amended motion until July 12, 2021, but Lopez

can take advantage of the so-called "prison mailbox rule": "[A] pro se prisoner's legal documents

are considered filed on the date that they're tendered to prison staff in accordance with

reasonable prison policies, regardless of whether they are ultimately mailed or uploaded."

*Taylor v. Brown*, 787 F.3d 851, 858 (7th Cir. 2015).  Here, Lopez's amended motion was dated

July 5, 2021, and the envelope he sent it in was also post-marked July 5, 2021.  Still, this falls

short of the timeliness period under § 2255(f)(1) because Lopez's conviction became final on

April 22, 2019, when the Supreme Court denied his Petition for writ of certiorari.

Lopez argues his ineffective assistance of counsel claim, however, is timely under

§ 2255(f)(4) because it was not until the government filed a brief in response to Lopez's Rule 33

Motion on July 6, 2020, that Lopez learned that the government had previously informed his

appellate counsel of the ex parte communications prior to the September 28, 2018, oral

arguments in his appellate case. The government argues that this is a "red-herring": Lopez could have asserted his claim earlier because the emails at issue were made public in August 2018. And, those facts are all that were needed to assert the legal argument that his attorney was ineffective for not raising Lopez's amended claims on appeal. The Court agrees with the government on this point—Lopez's claims are not independently timely under § 2255(f)(4).

Nonetheless, this analysis also points to the conclusion that Lopez's amended claims relate back to his original motion and, therefore, are timely. Federal Rule of Civil Proceedings 15(c)(1)(B) provides that pleading amendments relate back to the filing date of the original pleading when "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." The Supreme Court clarified in *Mayle v. Felix*, 545 U.S. 644 (2005), that an amended petition "does not relate back (and thereby escape AEDPA's one-year time limit) when it asserts a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth." *Mayle v. Felix*, 545 U.S. 644, 650, 125 S.Ct. 2562 (2005).

Lopez's amended claims meet this standard. Ground four in Lopez's original petition claims that Lopez "is entitled to resentencing by a different Judge under 28 U.S.C. 455(a) like that of the similarly situated in *United States v. Atwood*." *See* § 2255 Motion at 8 (d/e 75). On the one hand, his amended claims that appellate counsel was ineffective for not raising this claim stems from a separate factual event: in his original motion Lopez is claiming he is entitled to relief based on the fact of the ex parte communications themselves. In his amended motion, Lopez is seeking relief based on the fact that his attorney did not recognize the significant of the ex parte communications while his case was on appeal. Nonetheless, the Court finds that the core facts of these claims relate to the ex parte communications and the amended motion

represents primarily a change of legal theory. *See also Love v. Gomez*, No. 16 C 6869, 2021 WL 2221492, at *4 (N.D. Ill. June 2, 2021) (finding that the relation back rule applies where there is "a change in legal theory, such as where the original petition states facts that amount to an occurrence and the amended petition relies on those facts but asserts a different legal theory"). His amended claim alleging a due process clause argument based on the ex parte communications also meets the standard, as the operative facts supporting that claim are identical as the facts supporting his § 455(a) claim. Accordingly, the Court finds that Lopez's amended claims relate back to his original motion and are timely. This finding also makes Lopez's Motion for Miscellaneous Relief (d/e 94), in which he seeks equitable tolling for his amended claims, moot.

### 2. Lopez's due process argument is foreclosed by the Seventh Circuit.

Despite being timely, Lopez's due process argument in his amended motion is meritless. Lopez argues that the appearance of bias caused by Judge Bruce's ex parte communications was sufficient to deny Lopez's due process clause rights. Lopez also raised this argument on direct appeal from this Court's denial of his Rule 33 Motion for a New Trial. The Seventh Circuit rejected the claim, finding that circuit precedent in *Del Vecchio v. Illinois Dep't of Corr.*, 31 F.3d 1363, 1372 (7th Cir. 1994), which was reaffirmed in *United States v. Williams,* 949 F.3d 1056 (7th Cir. 2020), "forecloses Lopez's argument that the appearance of bias violates due process." *United States v. Lopez*, No. 20-2771, 2021 WL 4239653, at *1 (7th Cir. June 8, 2021). Lopez is not entitled to relitigate this claim in collateral review.

Moreover, Lopez misunderstands the caselaw he cites. Lopez argues that the Supreme Court "clarified" that appearance of bias is sufficient for a due process violation in *Caperton v. A.T. Massey Coal Co.,* 556 U.S. 868, 129 S. Ct. 2252 (2009). He argues that *Caperton* implicitly

abrogated the Seventh Circuit's holding in *Del Vecchio v. Illinois Dep't of Corr.*, 31 F.3d 1363,

1372 (7th Cir. 1994), which held that "bad appearances alone do not require disqualification"

under the due process clause.  However, Lopez is mistaken about *Caperton*'s holding—*Caperton*

addressed when circumstances create an "intolerable probability of actual bias."  The Supreme

Court found that on the "extreme facts" of the case, the probability of actual bias—even if there

was no actual bias—rose to an unconstitutional level.  *Id.* at 887.  The Seventh Circuit's holding

in *Del Vecchio* also emphasized that the inquiry is not merely whether there was actual bias, but

whether there was an unconstitutional "potential for bias."  *Del Vecchio*, 31 F.3d at 1371 ("If the

question truly is whether a defendant received a fair trial, bad appearances alone should not

require disqualification to prevent an unfair trial. What may appear bad to an observer, especially

in hindsight, may not have influenced—or, more importantly, may not have had any real

possibility to influence—the judge in his decision-making process.").  In short, the two cases are

in line: appearance of bias is insufficient to show a due process violation unless there existed a

sufficient probability of actual bias.

Lopez's argument that *Gacho v. Wills*, 986 F.3d 1067 (7th Cir. 2021), calls into question

*Del Vecchio* is also without merit.  In *Gacho*, the petitioner argued that his due process rights

were violated when the trial judge accepted a bribe from his co-defendant.  The Seventh Circuit

noted *Caperton's* holding that evidence of actual bias is not always necessary to establish a due

process violation: "Constitutional claims of judicial bias also have an objective component: the

reviewing court must determine whether the judge's conflict of interest created a constitutionally

unacceptable likelihood of bias for an average person sitting as judge."  *Id.* at 1068.  Again, the

inquiry is not whether there was an appearance of bias, but whether actual bias should be

essentially presumed under the objective facts of the case.

### 3. Lopez's appellate counsel was not ineffective for failing to raise a federal recusal statute claim.

Lopez's final claim is that his appellate counsel was ineffective for not raising a claim under the federal recusal statute on appeal. Lopez argues that, given the result in *Atwood*, his claim would have been successful and his case would have been remanded for a resentencing before a different judge. The parties agree that Lopez's attorney would have had time to file a supplemental brief raising this claim, but the government argues that the failure to raise this argument was neither deficient performance on the part of his counsel nor did it cause any prejudice to Lopez.

The failure to raise an issue on appeal generally does not rise to the level of constitutional ineffective assistance of counsel. For example, "appellate counsel who files a merits brief need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal." *Smith v. Robbins*, 528 U.S. 259, 288 (2000). While it is possible to bring an ineffective assistance of counsel claim based on appellate counsel's failure to raise a particular claim, it is difficult to demonstrate that counsel was incompetent. *Id.*; *see also Davila v. Davis*, 137 S. Ct. 2058, 1067 (2017) (failing to raise claim on appeal not deficient unless "claim was plainly stronger" than those presented). Given the mandatory nature of Lopez's life sentence, it is hard to see what Lopez could have gained from raising this argument. He has an uphill battle showing that his attorney was ineffective for failing to pursue this claim instead the more obvious claims that existed.

Regardless, as the Court found above, Lopez's argument that he is entitled to a resentencing due to Judge Bruce's failure to recuse under § 455(a) is meritless. Accordingly,

Lopez did not suffer any prejudice when counsel failed to raise the argument on appeal and his claim of ineffective assistance must be denied.

## IV. EVIDENTIARY HEARING

An evidentiary hearing is not always necessary in § 2255 cases.  *See Bruce v. United States*, 256 F.3d 592, 597 (7th Cir. 2001).  However, "[a] hearing is required unless the record conclusively shows that the movant is not entitled to relief."  *Hicks v. United States*, 886 F.3d 648, 650 (7th Cir. 2018); 8 U.S.C. § 2255(b).  Here, no hearing is necessary, because Lopez's claims do not entitle him to relief even if all the facts he alleged are true.

## V.  CERTIFICATE OF APPEALABILITY

If Petitioner seeks to appeal this decision, he must first obtain a certificate of appealability.  *See* 28 U.S.C. § 2253(c) (providing that an appeal may not be taken to the court of appeals from the final order in a § 2255 proceeding unless a circuit justice or judge issues a certificate of appealability).  A certificate of appealability may issue only if Petitioner has made a "substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  Where a claim is resolved on procedural grounds, a certificate of appealability should issue only if reasonable jurists could disagree about the merits of the underlying constitutional claim *and* about whether the procedural ruling was correct.  *Flores-Ramirez v. Foster*, 811 F.3d 861, 865 (7th Cir. 2016) (*citing Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).  Here, the Court finds that Lopez has not made a substantial showing that he received ineffective assistance of counsel or that he was denied due process.  Accordingly, the Court declines to issue a certificate of appealability.

## VI.  CONCLUSION

For the reasons stated, the Court DENIES Petitioner-Defendant Jose Jaime Lopez's

Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 (d/e 75).  The

Court GRANTS Lopez's Motion to Amend his Motion to Vacate, Set Aside, or Correct Sentence

pursuant to 28 U.S.C. § 2255 (d/e 84), but DENIES the claims he raises in his amended motion.

Lopez's Motion for Equitable Tolling (d/e 94) is DISMISSED AS MOOT.  The Court

DECLINES to issue a certificate of appealability.  The Clerk is directed to enter judgment and

CLOSE the accompanying civil case, No. 20-cv-2091.


Signed on this 16th day of February 2022.

/s/ James E. Shadid
James E. Shadid
United States District Judge

**NOTICE**

Petitioner is informed that if he wishes to contest this Order, he has two options. He can ask the Seventh Circuit to review the Order, or he can first ask the undersigned to reconsider the Order before appealing to the Seventh Circuit. If Petitioner chooses to go straight to the Seventh Circuit, he must file a notice of appeal within 60 days from the entry of judgment or order appealed from. Fed. R. App. P. 4(a)(1)(A). The deadline can be extended for a short time only if Petitioner files a motion showing excusable neglect or good cause for missing the deadline and asking for an extension of time. Fed. R. App. P. 4(a)(5)(A), (C). *See also Sherman v. Quinn*, 668 F.3d 421, 424 (7th Cir. 2012) (explaining the good cause and excusable neglect standards); *Abuelyaman v. Illinois State Univ.*, 667 F.3d 800, 807 (7th Cir. 2011) (explaining the excusable neglect standard).

Additionally, Petitioner will only be allowed to proceed on his appeal if he obtains a certificate of appealability. Here, the undersigned District Judge has already declined to issue a certificate of appealability. Thus, Petitioner must request a certificate of appealability from the Court of Appeals pursuant to Federal Rule of Appellate Procedure 22 and 28 U.S.C. § 2253(c), in addition to filing his notice of appeal. The current cost of filing an appeal with the Seventh Circuit is $505.00. The filing fee is due at the time the notice of appeal is filed. Fed. R. App. P. 3(e). If Petitioner cannot afford to pay the entire filing fee up front, he must file a motion for leave to appeal in forma pauperis ("IFP motion") along with a recent statement for his prison trust fund account. *See* Fed. R. App. P. 24(a)(1)(C). The IFP motion must set forth the issues Petitioner plans to present on appeal. *See* Fed. R. App. P. 24(a)(1)(C). If he is allowed to proceed IFP on appeal, he will be assessed an initial partial filing fee. 28 U.S.C. § 1915(b)(1).

He will then be required to make monthly payments until the entire filing fee is paid. 28 U.S.C. § 1915(b)(2).

On the other hand, if Petitioner wants to start with the undersigned, he should file a motion to alter or amend the judgment under Federal Rule of Civil Procedure 59(e). The motion must be filed within twenty-eight (28) days of the entry of judgment, and the deadline cannot be extended. Fed. R. Civ. P. 59(e); 6(b)(2). The motion also must comply with Rule 7(b)(1) and state with sufficient particularity the reason(s) that the Court should reconsider the judgment. *Elustra v. Mineo*, 595 F.3d 699, 707 (7th Cir. 2010). *See also Blue v. Hartford Life & Acc. Ins. Co.*, 698 F.3d 587, 598 (7th Cir. 2012) ("To prevail on a Rule 59(e) motion to amend judgment, a party must clearly establish (1) that the court committed a manifest error of law or fact, or (2) that newly discovered evidence precluded entry of judgment.") (citation and internal quotation marks omitted).

So long as the Rule 59(e) motion is in proper form and timely submitted, the 60-day clock for filing a notice of appeal will be stopped. Fed. R. App. P. 4(a)(4). The clock will start anew once the undersigned rules on the Rule 59(e) motion. Fed. R. App. P. 4(a)(1)(A), (a)(4), (a)(4)(B)(ii). To be clear, if the Rule 59(e) motion is filed outside the 28-day deadline or "completely devoid of substance," the motion will not stop the clock for filing a notice of appeal; it will expire 60 days from the entry of judgment. *Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 826 (7th Cir. 2014); *Martinez v. Trainor*, 556 F.2d 818, 819–20 (7th Cir. 1977). Again, this deadline can be extended only on a written motion by Petitioner showing excusable neglect or good cause.